# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02349-SCT

*MARANATHA FAITH CENTER, INC.*

*v.*

*COLONIAL TRUST COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2003 |
| TRIAL JUDGE: | HON. ROBERT L. LANCASTER |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BENNIE L. TURNER |
| | ANGELA TURNER LAIRY |
| | L. LANDIS SEXTON |
| | TYLER CHARLES VAIL |
| ATTORNEYS FOR APPELLEE: | RICHARD SHANE McLAUGHLIN |
| | WILLIAM M. BEASLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED -12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    In February 2003, the Chancery Court of Lowndes County entered a final judgment against Maranatha Faith Center, Inc. (Maranatha), in favor of Colonial Trust Company (Colonial) in the amount of $876,753.08.[1] By September, 2003, the judgment remained unsatisfied and Colonial thus levied execution on certain personal property found on

---

[1]We are unable to determine from the record the nature of the litigation resulting in this judgment, but suffice it to state here that this information is irrelevant to our consideration of the issues before us today.

Maranatha's premises and on Maranatha's chose in action styled ***Maranatha Faith Center, Inc. v. Kerr-McGee Corp.,*** being assigned cause number 2002-0004-CV1 on the docket of the Circuit Court of Lowndes County, Mississippi.[2] Maranatha moved that the writ be quashed and that the execution be stayed. Following a denial of these motions, Maranatha appeals raising the following issues. We hold that a chose in action is subject to a writ of execution.[3]

>   **I.     Whether an action for unliquidated damages can be executed upon by a judgment creditor and subsequently sold at public auction, possibly to a third party?**

¶2.     This is a case of first impression and requires the Court to consider Mississippi Code §§ 11-7-7, 13-3-127 and 13-3-135 and several opinions, including ***Hunt v. Preferred Risk Mut. Ins. Co.***, 568 So. 2d 253, 255 (Miss. 1990)).

¶3.     Maranatha argues that a levy of execution upon a chose of action is not authorized by Mississippi law. Further, Maranatha argued to the chancellor, that a writ of execution based on a judgment lien may only be applied to the *proceeds* of a lawsuit and not the lawsuit itself. Maranatha also suggested that a writ of garnishment was the proper method to collect on a

---

[2]Although the record before us in the case sub judice reveals very little information on this circuit court case, we are able to decipher from the record that the circuit court suit is a tort action for trespass in which Maranatha demands unliquidated damages for the contamination of real property by hazardous materials. During a hearing for a stay of the execution on the chancery court judgment pending appeal, the pastor for Maranatha, Steve Jamison, testified that Kerr McGee had offered $200,000 to settle the suit but that Maranatha sought $15 million. The record did reveal that there had evidently been considerable settlement negotiations; however we are unaware of the current status of negotiations.

[3]We clearly distinguish the facts in today's case from the facts in ***Coleman Powermate, Inc. v. Rheem Manufacturing Co.***, 880 So.2d 329, 330 (Miss. 2004), where we stated:

>   Based on the facts of this case, we do not reach the question today of whether a wrongful death may ever be assigned. However, for such a case as this one, where one tortfeasor attempts to use the Mississippi assignment statute to bring a wrongful death claim as assignee against another tortfeasor, we hold the wrongful death claim is not assignable.

judgment lien from an ongoing lawsuit and that, per ***William Iselin & Co. v. Delta Auction & Real Estate Co.***, 433 So.2d 911 (Miss. 1983), a writ of execution cannot be applied to intangible property such as ongoing litigation.[4]   The chancellor disagreed and held that under §§ 11-7-7, 13-3-127 and 13-3-135 a chose in action is subject to a writ of execution.

¶4.     On appeal, Maranatha reasserts its earlier argument and claims that the chancellor's ruling is contrary to state law and unconstitutional according to Miss. Const., 1890, Art. 3, § 24.  The Court disagrees.

¶5.     We have previously defined the term "chose in action.  In ***Garrett v. Gay***, 394 So.2d 321, 322 (Miss. 1981), we relied on 73 C.J.S. *Property* § 9 (1951) to state:

> A "chose in action" means, literally, a thing in action, and is the right of bringing an action, or a right to recover a debt or money, or a right of proceeding in a court of law to procure the payment of a sum of money, or a right to recover a personal chattel or a sum of money by action, or, as it is defined by statute, a right to recover money or personal property by a judicial proceeding.

¶6.     Generally, any chose in action is assignable after the suit is filed.  Miss. Code Ann. § 11-7-7 (Rev. 2004).  *See also* ***Sneed v. Ford Motor Co.***, 735 So.2d 306, 311 (Miss. 1999); ***Kaplan v. Harco Nat'l Ins. Co.***, 716 So.2d 673 (Miss. Ct. App. 1998). Miss. Code Ann. § 11-7-7 provides in part:

> [that a]ny chose in action or any interest therein, after suit has been filed thereon, may be *sold or assigned the same as other property*, whether such claim or any interest therein was heretofore assignable under the laws of this state or not.

---

[4]Both sides recognized before the chancery court that the ***Delta Auction*** case was limited to the issue of priority of creditors.  Because neither party cite this case in their brief, it is not discussed.

(emphasis added).[5] Until the enactment of statutory law, such was prohibited under the common law. ***Kaplan***, 716 So.2d at 676 (collecting authorities).

¶7.     Maranatha seeks a narrow reading of the statutes germane to our review of assigning a chose in action. While it concedes that state law allows the assignment or sale of a chose in action, it maintains that because there is no explicit statute authorizing the execution of a judgment on a chose in action, such is not permitted.   However, a reasonable interpretation of § 11-7-7 is that a chose in action may be transferred to the same extent as other property and therefore treated the same as other property.  *See* ***Cartwright v. Deposit Guar. Nat'l Bank***, 675 So.2d 847, 847 (Miss. 1996) (citing   ***Garrett v. Gay***, 394 So.2d 321, 322 (Miss. 1981) (the term personal property includes a chose in action.)).

¶8.     We do not read statutes in isolation, but instead, we must construe our statutes together. ***Wilbourn v. Hobson***, 608 So.2d 1187, 1191 (Miss. 1992) (statutes which relate to the same subject matter must be read together to determine the mind of the Legislature).

¶9.     The clear language of § 11-7-7, leaves little doubt that a writ of execution may be issued against a chose in action based on its status as personalty. Coupled with its authority to enact a statute that abrogates the common law rule, is the Legislature's ability to limit § 11-7-7. There is no indication that the Legislature sought or intended to limit § 11-7-7.   Accordingly, save any statutory exceptions, there is no limitation on the execution of a chose in action.

---

[5]***Flowers v. McCraw***, 792 So.2d 339 (Miss. Ct. App. 2001) (The right to sue for trespass to property (i.e. chose in action) is *assignable* to a subsequent purchaser of the property) (emphasis added) (citing ***J.H. Leavenworth & Son, Inc., v. Hunter***, 150 Miss. 245, 116 So. 593 (1928)); ***Kaplan***, 716 So.2d at 677 (Like a majority of jurisdictions, a bad faith claim against an insurer is *assignable* under state statutes).

¶10.    Further supporting this premise is Miss Code Ann. § 13-3-135 (Rev. 2002), which provides:

> The purchaser of any chose in action, stock, share, interest, judgment, or decree of the defendant, *sold under execution or attachment*, shall become the owner thereof, in the same manner as if it had been regularly assigned to him by the defendant.

(emphasis added). This statute specifically addresses the rights of purchaser of a chose in action sold under execution.   It expressly provides that a purchaser of a chose in action is on the same footing as one who received the chose via a more typical assignment.   Implicit in § 13-3-135 is that a chose in action may be sold under execution.

¶11.    Maranatha does not address why the Legislature would consider the rights of a party to a transaction that is prohibited under state law.   Instead, as opposed to addressing the provisions of §13-3-135, Maranatha focuses on the fact that § 13-3-127 only speaks to attachment and not execution.[6]

¶12.    Miss. Code Ann. § 13-3-127 (Rev. 2002) provides:

> In case an attachment be levied on rights, credits, and choses in action, the officer shall take into his possession the books of accounts and other evidences of debt belonging to the defendant, and if the plaintiff so direct, he shall summon all persons appearing to be indebted to the defendant, or to have effects of his in their hands, as garnishees, in the manner prescribed by law.

---

[6] Generally, attachment distinguished from execution:

Attachment is a form of execution issued before judgment, or, as otherwise described, it is in the nature of a preliminary execution to secure satisfaction of the plaintiff's claim.  The writs of attachment and execution are essentially different.  An attachment is issued for the purpose of seizing property and holding it in order that, if a judgment should be obtained, the property thus seized will be forthcoming to satisfy such judgment, while an execution is a writ issued for the purpose of enforcing a judgment that has been obtained.

7 C.J.S. *Attachment* § 2.

Maranatha makes two arguments regarding § 13-3-127. First, Maranatha stresses that § 13-3-127 speaks only to circumstances involving attachment. The Court agrees with Maranatha in that § 13-3-127 only addresses attachment. However, the fact that § 13-3-127 is limited to attachments in no way supports the argument that a chose in action is not subject to a writ of execution. The text of § 13-3-127 simply directs the seizing officer to take possession of certain items in circumstances of attachment. Because a statute addressing the procedure for attachment does not prohibit execution, it is irrelevant.

¶13.     Maranatha further argues that it was improper for the chancery court to cite the "statutory title" in determining whether § 13-3-127 authorizes execution on choses in action. Maranatha is correct that in this instance it was improper to consider the heading while interpreting the statute.

¶14.     In its opinion, the chancery court wrote:

> The title to § 13-3-127 reads: "Levy of writs of execution and attachment- on choses in action." In the statute itself only the word "attachment" appears which is not exclusive of execution, as the levy of a writ of execution is an attachment of the chose in action."

The opinion further relied on *Gully v. Jackson International Co.*, 165 Miss. 103,145 So. 905 (1933) wherein this Court, finding that the body of a privilege tax statute was incomplete, determined that headings enacted by the Legislature were in fact lead lines and to be considered part of the statute itself. 145 So. at 906.

¶15.     Significantly in *Gully* the headings at issue were actually part of the enacted legislation and had been before the Legislature. Whereas in the instant case, the headings at issue are the

6

product of the publisher and have never been considered by the Legislature.[7]  Indeed, the user's guide supplied by LexisNexis in the front of each volume of the Mississippi Code Annotated provides:

## STATUTE HEADINGS

> Headings or "catchlines" for Code sections and subsections are generally created and maintained by the publisher.  They are mere catchwords and are not to be deemed or taken as the official title of a section or as part of the section.  Your suggestions for improvements or particular catchlines are invited.

Mississippi Code 1972 Annotated vol. 4, p. xii.[8]  Accordingly, Maranatha's second argument regarding § 13-3-127 is without merit.

¶16.    Before addressing Maranatha's arguments regarding judicial precedent, the Court finds that §§11-7-7 and 13-3-135 support our determination that under statutory law a chose of action is subject to a writ of execution.

¶17.    We consider the chancery court's reliance on *Hunt v. Preferred Risk Mutual Ins. Co.*, 568 So.2d 253 (Miss. 1990).  In *Hunt*, this Court stated that it is possible for a judgment creditor to levy execution on an insured's cause of action against an insurer and subsequently purchase such chose at a sheriff's sale.  *Id*. at 253 n.1.  It is important to note that the footnote in *Hunt* is dicta and that the opinion fails to consider any of the aforementioned statutes. Instead, it relied on a treatise which is at best persuasive in circumstances such as this, that

---

[7]  Miss. Code Ann. § 1906 (1942) was carried forward in the 1972 Code as § 13-3-127. Apparently, the headings provided by the publisher were taken from Miss. Code Ann. § 1903 (1942), which was omitted during the 1972 revision.

[8]  Where they were originally added by the publisher, a "heading is only the opinion of the code compiler as to the meaning of the statute and is not to be considered part of the statute."  Norman J. Singer, Statutes and Statutory Construction § 47:14, at 255 (6th ed. 2000).

require this Court to consider state statutes on execution. Further reducing the persuasiveness of the footnote, is the fact that the appeal in *Hunt* raised issues involving conflict of interest and that the opinion rested on Hunt's lack of standing. *Id*.

¶18. A review of decisions by foreign jurisdictions reveals that there is no majority rule regarding whether a chose in action is subject to a writ of execution. *See Cagle v. Butcher*, 575 P.2d 321 (Ariz. 1978) (Under statute, garnishment, and not execution, is proper remedy to reach debt represented by a chose in action.); *O'Hern v. Donald*, 256 So.2d 13 (Fla. Dist. Ct. App. 1971) (Choses in action are subject to execution only when made so by statute or voluntarily given up to be sold on execution.); *Prodigy Centers/Atlanta No. 1 L.P. v. T-C Associates, Ltd.*, 501 S.E.2d 209 (Ga. 1998) (Under state statue, choses in action are not subject to seizure and sale save explicit exceptions.); *Arbie Mineral Feed Co. v. Farm Bureau Mut. Ins. Co.*, 462 N.W.2d 677, 680 (Iowa 1990) (A cause of action is in existence prior to judgment and is personal property upon which, under Iowa law, a creditor may levy.); *Applied Med. Techns., Inc. v. Eames*, 44 P.3d 699 (Utah 2002) (Choses in action may ordinarily be acquired by a creditor through attachment and execution.).

¶19. In summing up the rationale that there was no valid reason to disallow a levy of execution against a chose of action, the learned chancellor in the case sub judice, in relying on a Washington Supreme Court case, stated it best:

> "But why not? It is property. It is capable of being transferred. It is capable of being converted into a judgment which is subject to execution. It is an asset of the judgment debtor, and why should not his assets, whatever their nature, be taken to satisfy a judgment? We cannot see any logical reason why such property should not be levied on."

8

***Johnson v. Dahlquist***, 225 P. 817, 818 (Wash. 1924).

*CONSTITUTIONALITY*

¶20.	Maranatha argues that the chancellor's ruling is contrary to Art. 3, § 24, Miss. Const., 1890, which provides:

> All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

However, because Maranatha never raised this argument before the trial court, it is procedurally barred.

*UNRELATED THIRD-PARTIES AND CHAMPTERTY*

¶21.	Briefly, we address any potential concerns regarding the fact that our holding allows a wholly unrelated third party to purchase a chose in action at public auction.   In the instant appeal, neither party raises the issue of champerty or concerns about unrelated parties intermeddling in suits. Miss. Code Ann. §§ 97-9-11 to -23 makes champerty a criminal offense. *See also* ***Sneed v. Ford Motor Co.***, 735 So.2d 306 (Miss. 1999) (Generally, champerty is defined as bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds.)

¶22.	As it is not ripe, the parties aptly chose not to discuss this issue.  This is based on the fact that no third party is presently involved. Further, it is very likely that no third parties will

ever become involved in these matters. All three parties involved in the instant appeal have an interest in purchasing the chose and thus rendering moot concerns regarding champerty.[9] Accordingly, this Court makes no ruling regarding this issue.[10]

## II. Was it an Error Not to Quash the Writ of Execution Based on the Fact that Exempt Property Was Seized?

¶23. Maranatha claims that during the execution of the writ of execution several items of exempt property were seized. Alleged exempt property includes: a safe containing $69 dollars, title to a bus, bond certificate (face value $10,000), watch, ring and various certificates. Relying on Miss. Code Ann. § 85-3-1 (Supp. 2004), Maranatha claims that the writ should have been quashed.

¶24. Maranatha raises this issue for the first time on appeal. Before the trial court, Maranatha only contested the writ to the extent that it sought to levy on the chose in action. It never raised any objections based on the safe and the items therein. Accordingly this issue is barred.

## CONCLUSION

---

[9] First, Kerr McGee would be interested in buying the suit against it. Second, Maranatha would be interested in reacquiring the suit based on the fact that it believes it is worth much more the judgment against it which is now being executed. Third, Colonial Trust could buy the suit itself.

[10] Maranatha raises the argument (albeit briefly) that if the chose in action is sold at a public auction, then the purchaser will receive the unliquidated damage award while Maranatha will be left with contaminated property. (It is unclear the degree of contamination which is alleged. However, it is referred to in the record as being hazardous and, based on the preliminary settlement offers, is seemingly significant.) Though it is not adequately briefed, this is a valid concern. Therefore, the Court reserves the right to assure that any assignment does not limit the remedies under state law or the authority of state agencies to assure that the contamination is appropriately cleaned. The basis for this Court to act could rest on obvious governmental and public interests.

¶25. For the foregoing reasons, we today hold that a chose in action is subject to a writ of execution. Colonial, as the judgment creditor in the chancery court action in which Maranatha is the judgment debtor, may by writ of execution levy upon the judgment debtor's chose of action in the pending circuit court action against Kerr-McGee, with such levy not to exceed the amount to which Colonial is now entitled pursuant to the chancery court judgment heretofore rendered in its favor against Maranatha.

¶26. We thus affirm the Lowndes County Chancery Court's judgment which denied Maranatha's motion to quash the writ of execution levied on Maranatha's circuit court chose in action against Kerr-McGee.

¶27. **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, EASLEY AND GRAVES, JJ., NOT PARTICIPATING.**