# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00959-SCT

*CINDY HENDERSON AND JOHN HENDERSON*

*v.*

*COPPER RIDGE HOMES, LLC, RICHARD*
*CONEY, INDIVIDUALLY AND FIRST BANK, A*
*MISSISSIPPI BANKING CORPORATION*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2017 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| TRIAL COURT ATTORNEYS: | MACY DERALD HANSON |
| | DENNIS L. HORN |
| | SHIRLEY PAYNE |
| | W. BRADY KELLEMS |
| | JOSEPH PRESTON DURR |
| | ALFRED L. FELDER |
| | LEVOY BRYANT AGNEW, IV |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | MACY DERALD HANSON |
| ATTORNEYS FOR APPELLEES: | DENNIS L. HORN |
| | W. BRADY KELLEMS |
| | SHIRLEY PAYNE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/06/2019 |
| MOTION FOR REHEARING FILED: | 03/28/2019 |
| MANDATE ISSUED: | |

### BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.

### BEAM, JUSTICE, FOR THE COURT:

¶1.     The motion for rehearing filed by First Bank is denied.  The previous opinions are

withdrawn, and these opinions are substituted therefor.

¶2.     This appeal stems from a breach-of-contract and tort case in the Pike County Circuit Court. John and Cindy Henderson filed suit against Copper Ridge Homes ("Copper Ridge") and First Bank regarding the construction of their new home in Magnolia, Mississippi. However, the case quickly spiraled into foreclosure proceedings upon the Hendersons' defaulting on their loan with First Bank. Instead, the judge granted First Bank's motion for judicial foreclosure.

¶3.     After that, the Hendersons unsuccessfully moved multiple times to amend their complaint to add wrongful foreclosure. The judge granted Copper Ridge's and First Bank's motions for summary judgment on all of the Hendersons' claims, finding that the claims, which arose from the alleged faulty construction of the house traveled with the title to the property. Because the Hendersons no longer owned any interest in the house and land, the judge found that they had lost their right to seek damages.

¶4.     On appeal, the Hendersons argue that the trial court erred by granting First Bank a judicial foreclosure, by granting Copper Ridge's and First Bank's motions for summary judgment, and by denying their motions for leave to amend and to add wrongful foreclosure to their complaint. Finding that the trial court erred in granting Copper Ridge's and First Bank's post-foreclosure motions for dismissal of the Hendersons' claims, the Court affirms the grant of judicial foreclosure, reverses the grant of summary judgment to both parties, and remands the case to the trial court for determination of the Hendersons' claims.

## FACTS AND PROCEDURAL HISTORY

¶5.     The Hendersons and Copper Ridge entered into a new-home construction contract on May 9, 2014, in Magnolia, Mississippi. Shortly thereafter, on May 24, 2014, the Hendersons contracted with First Bank to finance the construction of their new home.

¶6.     The Hendersons' complaint stems from a dispute over the price of the home and whether the contract was a fixed-price or cost-plus contract.[1] The Hendersons contend that the contract was a fixed-price contract for $320,000, but Copper Ridge contends it was a cost-plus contract.

¶7.     The construction contract contained a provision regarding the changes to the scope of work: any changes to be made had to be in writing. The record contains no evidence of any change orders. Yet the Hendersons received two invoices from Copper Ridge for overage charges in the amounts of $24,386.07 and $29,829.44.

¶8.     The Hendersons further allege that First Bank, which exercised sole and exclusive control over the disbursements, had paid approximately $316,000 to Copper Ridge, leaving approximately $4,000 to complete the house under the fixed-price contract. John Henderson was asked to sign three *backdated* draw disbursements for First Bank. However, he refused to sign a final disbursement because the house was not close to being completed.

¶9.     Dissatisfied with Copper Ridge and First Bank, the Hendersons filed their complaint

---

[1]A cost-plus contract is "a contract in which payment is based on a fixed fee or a percentage added to the actual cost incurred." *Cost-plus contract*, Black's Law Dictionary (3d ed. 2001).

3

on April 30, 2015, alleging breach-of-contract and tort claims against both parties. Shortly after filing their complaint, the Hendersons did not make their payment on May 23, 2015, as required by the promissory note. First Bank amended its initial answer on October 1, 2015, to include a counterclaim for judicial foreclosure. In response, the Hendersons filed a motion for leave to amend their complaint so they could add wrongful foreclosure, fraud, and breach of the duty of good faith and fair dealing to their complaint.

¶10.     Because the foreclosure had not occurred at that time, the judge disallowed adding wrongful foreclosure, but he allowed the Hendersons to amend their complaint to include fraud and breach of the duty of good faith and fair dealing. At the summary-judgment hearing on judicial foreclosure, the trial court found that the Hendersons had not produced sufficient evidence to rebut the foreclosure; therefore, the judge granted First Bank's motion for an order of judicial foreclosure.

¶11.     Following the judicial foreclosure, the Hendersons sought leave to amend their complaint to add wrongful foreclosure a second time. Simultaneously, Copper Ridge and First Bank sought to dismiss the Hendersons' claims altogether. The trial court denied the Hendersons' motion for leave to amend and granted Copper Ridge's and First Bank's post-foreclosure summary-judgment motions, finding that the claims arising out of the alleged faulty construction of the house traveled with the title to the property. In view of the foreclosure, the trial court found that because the Hendersons no longer owned any interest in the house and land, they had lost their right to seek damages.

4

¶12. A third time, the Hendersons moved for leave to amend their complaint to add wrongful foreclosure, and the trial judge denied the motion. Aggrieved, the Hendersons appeal the orders entered by the trial court.

## LAW AND ANALYSIS

### I. Standard of Review

¶13. We must review three rulings on appeal—two grants of summary judgment and a denial of a motion to amend the complaint.

¶14. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013) (quoting *Pratt v. Gulfport–Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (Miss. 2012), *overruled on other grounds by Wilcher v. Lincoln Cty. Bd. of Supervisors*, 243 So. 3d 177, 188 (Miss. 2018)).

> Summary judgment is appropriate and "shall be rendered" if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Id.* (quoting M.R.C.P. 56(c)).

¶15. We review the denial of a motion to amend for abuse of discretion. *Webb v. Braswell*, 930 So. 2d 387, 392 (Miss. 2006).

### II. First Grant of Summary Judgment: Judicial Foreclosure

¶16. First Bank first moved for summary judgment on its judicial foreclosure counterclaim. Tracking the summary judgment standard, First Bank argued there was no material fact

5

dispute that the Hendersons had defaulted by not paying the construction loan and, consequently, First Bank was entitled to foreclosure as a matter of law. In support of its motion, the bank produced evidence of the promissory note that the Hendersons signed on May 23, 2014. The promissory note stated that the Hendersons had agreed to "pay this loan in one payment with all outstanding principal plus all accrued unpaid interest on May 23, 2015," and to pay "regular monthly payments of all accrued unpaid interest due as of each payment date beginning July 5, 2014, with all subsequent interest payments to be due on the same day of each month after that." First Bank also provided evidence of the Hendersons' security for the promissory note, the assignment of the deposit account, and a construction deed of trust with First Bank as lender and beneficiary. The promissory note was not paid by May 23, 2015, and as of September 28, 2015, the payoff on the deed of trust was $326,969.38.

¶17.   In response to First Bank's motion, the Hendersons did not argue that the loan documents were erroneous; rather, they argued that First Bank's alleged material breach was an excuse or defense to their default. The Hendersons further contended that ruling on the motion for judicial foreclosure then would have been premature when their other claims had yet to be adjudicated.

¶18.   At this point, the trial judge granted First Bank's request to foreclose, *while* expressly leaving open the Hendersons' ability to pursue claims for damages against First Bank based on, among other things, alleged breaches of the loan agreement. Because the Hendersons

6

chose to sue for money damages, the judge assured them, "nothing about a ruling, nothing about granting summary judgment on the foreclosure, cuts off any damages of the Plaintiff. As a matter of fact, it may create damage arguments for the Plaintiff."

¶19.   The judge's decision to foreclose first and litigate later perhaps complicated matters. In hindsight, it would have been more practical for the court to delay granting a judicial foreclosure until it had resolved the Hendersons' contract-based claims. That said, we cannot say the trial judge reversibly erred by allowing First Bank to foreclose based on the undisputed evidence of the Hendersons' failure to pay the promissory note or by finding that the Hendersons had elected to pursue a claim for money damages against the bank instead of retaining title.

### III.    Second Grant of Summary Judgment: Dismissal of All Claims

¶20.   We do, however, find error in the judge's granting of First Bank's *second* motion for summary judgment, which Copper Ridge joined.  In these motions, both defendants argued the judicial foreclosure cut off the Hendersons' right to pursue claims related to the alleged damage to the home.

¶21.   First Bank argued it had purchased all of the Hendersons' claims in the foreclosure. Similarly, Copper Ridge contended that because First Bank held title to the property, First Bank held all rights and claims associated with repairs or completion costs, so the Hendersons had no standing to pursue damages for construction claims against Copper Ridge.  The Hendersons responded by arguing that their claims were *personal* and belonged

7

to them and not to the real property. As they saw it, they lost neither claims nor standing in the foreclosure.

¶22. The trial judge agreed with First Bank and Copper Ridge. After previously stating at the judicial foreclosure motion hearing that the Hendersons would not forfeit the opportunity to argue their other claims, the trial judge found the judicial foreclosure "cut off" the Hendersons' right to pursue their claims. Specifically, the trial judge ruled that "the claims arising out of the faulty construction of the house travel with the property" and that "no longer being in possession or owner[ship] of the property, those claims, to the extent that they exist, don't belong to Plaintiff anymore."

¶23. The Court finds that the trial court erred in finding that the claims traveled with the land and that the Hendersons thus lost rights to those claims. The deed of trust specifically stated that it conveys

> all of Grantor's right, title, and interest in and to the following described *real property*, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights; and all other rights, royalties and profits relating to the real property including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Pike County, State of Mississippi.

(Emphasis added.)

¶24. In support of its theory, the bank relied on **Citizens National Bank v. Dixieland Forest Products, LLC**, in which the Court held that the bank had purchased the plaintiff's lender-liability causes of action against the bank and thus had a right to be substituted as the

8

party in interest and to have the case dismissed. ***Citizens Nat'l Bank v. Dixieland Forest Prods., LLC***, 935 So. 2d 1004, 1014 (Miss. 2006). This case is not analogous to ***Citizens***, though, because the bank in ***Citizens*** did not foreclose; it purchased the claims in order to satisfy a debt. ***Id.*** at 1008. The bank purchased those choses in action and later filed a motion in the lender-liability suit (which it had purchased) to substitute itself as the party plaintiff and to have the suit dismissed, arguing that it owned the remaining claims in the suit and could rightfully dismiss them. ***Id.*** The trial court denied the bank's motion; however, this Court on appeal reversed the trial court's ruling in light of ***Maranatha Faith Center, Inc. v. Colonial Trust Co.***, 904 So. 2d 1004 (Miss. 2004). ***Citizens***, 935 So. 2d at 1009.

¶25. The ***Maranatha*** Court had held that the bank had purchased the plaintiff's lender-liability causes of action against the bank and was subsequently substituted as a party of interest with rights to dismiss the case. ***Id.*** (citing ***Maranatha***, 904 So. 2d at 1009). In ***Maranatha***, a creditor was granted a judgment against its debtor, and the judgment went unsatisfied for months. ***Id.*** (citing ***Maranatha***, 904 So. 2d at 1005). The creditor levied execution on Maranatha's choses in action against another company and found that the chose in action could be sold under execution. ***Id.*** at 1010 (citing ***Maranatha***, 904 So. 2d at 1005). Here, First Bank was not asserting that it had purchased the Hendersons' claims to satisfy any remaining deficiency on a judgment; it suggested that the claims either traveled with the title to the property by virtue of the foreclosure or that the Hendersons had lost their rights and the bank should be substituted as the real party in interest.

9

¶26. The deed of trust specifically conveys only the property identified in the deed of trust in the event of foreclosure. It did not convey the Hendersons' contractual or common-law rights related to either the promissory note or its separate contract with Copper Ridge.[2] Therefore, the Court holds that the trial court erred in finding that the Hendersons' claims traveled with the title to the property upon foreclosure. Accordingly, we reverse the grant of summary judgment to Copper Ridge and First Bank.

### IV. Denial of Motion to Amend the Complaint: Wrongful Foreclosure

¶27. As a final matter, the Hendersons argue the trial judge abused his discretion when he denied them leave to amend their complaint to add wrongful foreclosure.

¶28. Under Mississippi Rule of Civil Procedure 15(a), "a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires." M.R.C.P. 15(a). "While the trial court has discretion to allow an amendment and should do so freely under the proper circumstances, an amendment should not occur when to do so would prejudice [the] defendant." *Webb*, 930 So. 2d at 393 (quoting *Hester v. Bandy*, 627 So. 2d 833, 839 (Miss. 1993)).

¶29. Because we affirm the first grant of summary judgment permitting the foreclosure, we

_____

[2] We note the fact the Hendersons no longer own the home may impact the type of remedy or amount of damages available to them. But as we clarified in *Business Communications, Inc. v. Banks*, to prevail on a breach of contract claim, the plaintiff is required to prove by a preponderance of the evidence only "the existence of a valid and binding contract . . . that the defendant has broken, or breached it[,]. . . without regard to the remedy sought or the actual damage sustained." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012) (citation omitted)).

question whether the Hendersons will meet the high bar set for a traditional wrongful-foreclosure claim. ***Nat'l Mortg. Co. v. Williams***, 357 So. 2d 934, 935-36 (Miss. 1978) ("A mortgagor is entitled to recover damages for a wrongful or fraudulent foreclosure of the mortgage, as where an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor; or he may recover damages where the foreclosure is conducted negligently or in bad faith, to his detriment . . . ." (quoting 59 C.J.S. *Mortgages* § 491, at 774 (1949))). That said, because we are reversing the second grant of summary judgment, we see no reason why leave should not freely be given to the Hendersons to amend their complaint to add claims based on alleged damages arising from the foreclosure. However, any amendment should be limited to a claim for money damages only. Generally, a wrongful-foreclosure claimant "has the right to elect between (1) having the sale set aside and (2) recovering from the mortgagee the damages suffered as a result of the wrongful foreclosure." *Id.* at 936. But in this specific case, we find that allowing the Hendersons to amend their complaint to add a claim to set aside the foreclosure sale would be prejudicial to First Bank and thus is outside the discretionary authority of Rule 15(a). *Webb*, 930 So. 2d at 393. As the record reflects, before the foreclosure, the Hendersons elected to affirm the contract with First Bank and to pursue a claim for money damages. And nothing in our ruling should be construed as permitting the Hendersons to reverse course and now seek recision and reclamation of title.

**CONCLUSION**

11

¶30. Finding that the trial court erred in granting Copper Ridge's and First Bank's post-foreclosure summary-judgment motions on the Hendersons' claims, the Court affirms the grant of judicial foreclosure, reverses the grant of summary judgment to Copper Ridge and First Bank, and remands the case to the trial court for proceedings consistent with this opinion.

¶31. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND BEAM, J. GRIFFIS, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING:**

¶32. I fully join the majority opinion. I write separately to explain my vote with regard to whether the trial court erred in granting First Bank's summary judgment motion for judicial foreclosure.

¶33. Cindy and John Henderson allege that First Bank "made unauthorized disbursements of the Henderson new home construction loan fund to Copper Ridge Homes[.]" After discovering those "unauthorized disbursements," the Hendersons chose not to make any more payments on the promissory note. Assuming that is true,[3] First Bank was the first party to breach the contract. The Hendersons essentially argue that, since First Bank breached first,

---

[3]"When reviewing an award of summary judgment, this Court . . . will presume that all evidence in the non-movant's favor is true." *Diogenes Editions, Inc. v. State ex rel. Bd. of Trustees of Insts. of Higher Learning*, 700 So. 2d 316, 319 (Miss. 1997) (quoting *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 640 (Miss. 1996)).

12

the trial court erred in granting the bank a judicial foreclosure. That argument is but partially correct and is not well developed.

¶34.    Under the common law, "[a] party who has breached or failed to properly perform a contract has a responsibility and a right to cure the breach." ***Byrd Bros., LLC v. Herring***, 861 So. 2d 1070, 1073 (Miss. Ct. App. 2003) (citing ***Fitzner Pontiac–Buick–Cadillac, Inc. v. Smith***, 523 So. 2d 324, 328 (Miss. 1988)). The nonbreaching party must give the breaching party notice of the breach and, assuming the breach can be cured, "must give [the breaching party] a reasonable opportunity to cure the breach." ***Id.*** (citing ***Fitzner***, 523 So. 2d at 328).

¶35.    Additionally, there is a difference between a material and an immaterial breach.

> A breach is material when there "is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose," or when "the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract[.]"

***UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.***, 525 So. 2d 746, 756 (Miss. 1987) (citations omitted). "Where the breach is a material one, the non-breaching party has a right to end the contract[.]" ***Herring***, 861 So. 2d at 1073 (citing ***UHS-Qualicare, Inc.***, 525 So. 2d at 756). "[I]f the breach is immaterial or minor, the nonbreaching party is not relieved of its duty to perform but may still sue for damages." Jeffrey Jackson, Mary Miller, Donald Campbell, et al., *Encyclopedia of Miss. Law* § 21:35 (2d ed.), Westlaw (database updated Oct. 2018) (citing ***Timms v. Pearson***, 876 So. 2d 1083 (Miss. Ct. App. 2004)).

¶36.    Based on these authorities, the Hendersons could have terminated the contract with

First Bank if the bank's breach had been material and if they had given First Bank an opportunity to cure it. Had the Hendersons terminated the contract, the trial court's granting a judicial foreclosure to First Bank would have been erroneous. The issues of breach and the remedies available both to the Hendersons and to the bank would have to have been resolved before a judicial foreclosure could have occurred. But the record and arguments in this case are unclear with respect to this issue.

¶37. In their appellate brief, the Hendersons cite only one authority on this issue, *Ferrara v. Walters*, 919 So. 2d 876 (Miss. 2005), using that case to define a material breach. However, the Hendersons offered no argument or legal authorities to explain the reason First Bank's breach was material as opposed to minor. Nor does the record reflect whether First Bank was given an opportunity to cure its alleged breach. Lacking argument on these points, we cannot ascertain from the record whether the contract was terminated before the Hendersons defaulted on their obligations under the promissory note.

¶38. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Bell v. State*, 879 So. 2d 423, 434 (Miss. 2004) (citing *Simmons v. State*, 805 So. 2d 452, 487 (Miss. 2001)). Additionally, when no "meaningful argument" is given in support of an issue on appeal, "the issue is considered waived." *Randolph v. State*, 852 So. 2d 547, 558 (Miss. 2002). *See also*, *Doss v. State*, 956 So. 2d 1100, 1102 (Miss. Ct. App. 2007). The Hendersons waived a full consideration of the issue they presented by failing to cite relevant authority and to provide meaningful argument in support of the same.

¶39.     Lawyers must provide authority in support of their arguments when appealing to this Court. If an issue is one of first impression, attorneys should state as much and, to the greatest extent possible, provide supporting authority for their arguments. The Court recognizes that Mississippi jurisprudence has not addressed every legal issue.[4] All the same, citation of some relevant authority—whether from other jurisdictions or secondary sources—is an important feature of appellate practice. Miss. R. App. P. 28(a)(7).

**KING, P.J., AND BEAM, J., JOIN THIS OPINION.**

---

[4]The issue at hand does not fall into this category.