# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00128-COA

IN THE MATTER OF THE ESTATE OF JOAN B.                       APPELLANT
ROOSA, DECEASED: ROSEMARY ROOSA

v.

CHRISTOPHER ROOSA, EXECUTOR, STUART                          APPELLEES
ALLEN ROOSA, JR., AND JOHN D. ROOSA

DATE OF JUDGMENT:              01/11/2022
TRIAL JUDGE:                   HON. CARTER O. BISE
COURT FROM WHICH APPEALED:     HARRISON COUNTY CHANCERY COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        PAUL M. NEWTON JR.
ATTORNEYS FOR APPELLEES:       JOHN G. McDONNELL
                               COURTNEY McDONNELL SNODGRASS
NATURE OF THE CASE:            CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                   AFFIRMED - 05/23/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This has been a most contentious probate litigation, spanning fifteen years, between sibling beneficiaries Rosemary Roosa and Christopher Roosa, who were the children of deceased parents Joan B. Roosa and astronaut Colonel Stuart Roosa. This appeal centers around the distribution of Joan B. Roosa's will.

¶2.     Joan died on October 20, 2007, and had named Christopher the executor of her will. Joan's estate included space artifacts that Colonel Roosa, the astronaut who flew "the command module *Kitty Hawk* to the moon on the Apollo 14 mission," bequeathed to her when he passed away. *Est. of Roosa v. Roosa*, 328 So. 3d 117, 119 (¶2) (Miss. Ct. App.

2019). Article IV of Joan's will states:

> I give and bequeath unto my Executor all of the certain artifacts of my late husband, STUART A. ROOSA, relating to the Apollo 14 moon launch, which I have not otherwise disposed of in my latest dated and signed separate outside listing. As to all such artifacts bequeathed to my Executor, the Executor shall have the authority to donate any such artifacts, as my Executor shall choose, to the Stuart Roosa Foundation, and any such artifacts not donated to the Stuart Roosa Foundation shall be divided equally among my children, as my children shall decide.

¶3. There are two separate locations containing items related to the Apollo 14 moon launch. One location is the storage facility "Ace," which houses some of the space artifacts. The second location is the closet of Joan's home (also known as the "Safe Room"), which contains the rest of the space artifacts.

¶4. In 2007, Rosemary conducted her own handwritten inventory of the Safe Room artifacts. On February 6, 2012, Peachstate Historical Consulting Inc. completed a separate inventory of the Safe Room. On June 28, 2012, the chancellor ordered an inventory and appraisal of Joan's assets. However, on August 6, 2012, the chancellor sealed the inventory, stating that the "Executor has been informed that NASA may have a claim to certain space memorabilia items for the inventory."

¶5. On October 4, 2016, Rosemary moved to compel the inventory. On November 16, 2016, the chancellor denied the motion to compel because "the former counsel for movant Rosemary Roosa stated on the record in open Court that they were satisfied with the inventories provided by executor Christopher Roosa."

¶6. On November 17, 2017, the chancellor closed Joan's estate and entered an "Order Approving Final Accounting, Payment of Expenses and Fees, and Closing Estate." The

chancellor ordered the Executor to maintain control of the remaining assets for distribution, including but not limited to (1) boxes of documents and photos held in Ace and (2) NASA Space memorabilia. The chancellor also granted the Executor discretion to distribute the space artifacts, according to the order closing the estate.

¶7. In December 2017, Christopher appealed from the order closing the estate, arguing the chancery court erred by (1) finding that the forfeiture provision was not enforceable against Rosemary, (2) refusing to give the jury interrogatories, (3) allowing Rosemary to use Joan's car while waiting to settle Joan's estate, and (4) allowing Rosemary's former attorneys to intervene. *Roosa*, 328 So. 3d at 120 (¶6). On April 23, 2019, this Court affirmed the chancery court's order. *Id*. at 122-24 (¶¶18-31). On May 19, 2020, the chancellor ordered the distribution of the assets. The same day, Christopher signed a letter designating "all space items and artifacts, including but not limited to the Apollo 14 moon launch, to the Stuart Roosa Foundation."

¶8. On June 7, 2020, Rosemary moved to reopen the estate and appoint an *administrator de bonis non*.[1] On June 16, 2020, the chancellor entered judgment reopening the estate and appointing General Charles Duke as the *administrator de bonis non*. Christopher moved to set the order aside. On July 30, 2020, a hearing was held on the motion to set aside the order reopening the estate. At the hearing, the chancellor ordered the appointment of a neutral party to oversee a complete review of the boxes at Ace. On September 30, 2020, the

---

[1] This is a person appointed to administer the estate when the original executor or administrator has died, resigned, been removed, or become incompetent. Miss. Code Ann. § 91-7-69 (Rev. 2021).

chancellor set aside his order reopening the estate and appointing General Duke because of insufficient service of process. The chancellor also ordered that "[a]ll flown artifacts not located at Ace Storage/Ace Data shall be deemed to have been donated to the Stuart Roosa Foundation by the Executor."

¶9. On April 16, 2021, a new inspection of the boxes at Ace was completed, and the assets were distributed to the beneficiaries. On October 31, 2021, Rosemary moved for an inspection and inventory of the Safe Room items at Joan's home.

¶10. On November 15, 2021, Christopher filed a response and separately moved to close the estate. Christopher argued that according to the chancellor's September 30, 2020 order, the items not located at Ace had already been deemed donated to the Stuart Roosa Foundation. Christopher also argued, according to Rosemary's own motion and the chancellor's order, the estate was reopened for the limited purpose of inspecting the items at Ace.

¶11. On January 10, 2022, Rosemary replied to Christopher's response and denied that the donation had ever occurred. Rosemary supposed that even if the donation had occurred, the requirements of a valid inter vivos gift had not been satisfied because Christopher's actions were more properly considered an "offer" to donate to the Foundation, which the Foundation did not accept. Notably, the Foundation has not been joined as a party to this suit and was not a part of the original probate action.

¶12. On January 11, 2022, the chancellor entered an order closing the estate and denying Rosemary's motion for an inspection and inventory of the Safe Room. The chancellor found

4

that when Rosemary inquired as to whether the space artifacts in the Safe Room needed to be inspected at the July 30, 2020 hearing, the chancellor deemed all flown artifacts in the Safe Room to have been donated to the Stuart Roosa Foundation. In addition, the chancellor found that the items had been professionally inventoried in 2012 and that Rosemary's counsel stated that Rosemary was satisfied with the inventories. Rosemary appeals from the chancery court's order.

## STANDARD OF REVIEW

¶13. "We employ a limited standard of review on appeals from chancery court." *In re Est. of Carter*, 912 So. 2d 138, 143 (¶18) (Miss. 2005). "If substantial credible evidence supports the chancellor's decision, it will be affirmed." *Id*. "When reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, [however,] this Court will apply a de novo standard of review." *Roosa*, 328 So. 3d at 120 (¶7) (quoting *In re Last Will & Testament of Carney*, 758 So. 2d 1017, 1019 (¶8) (Miss. 2000)).

## DISCUSSION

¶14. Rosemary raises two issues on appeal: (1) whether it was permissible under Joan's will for the Executor, Christopher, to donate the items in the Safe Room to the Foundation, and (2) whether the Executor's donations to the Foundation are void due to lack of acceptance by the Foundation, as required for a valid inter vivos gift. For the reasons given below, we find both of Rosemary's issues have been waived. Nevertheless, her claims fail on the merits, as well.

### I.    Authority to Donate the Safe Room Items

5

¶15. Rosemary's first issue is procedurally barred because Rosemary has failed to cite on appeal any legal authority in support of her assertion that because Safe Room items were not properly inventoried and identified, the Executor was not authorized to donate the items. Rosemary has also not provided any reason for this Court to conclude that the Executor did not have authority to donate the items.

¶16. "[I]t is the duty of the appellant to provide authority in support of an assignment of error." *Herrin v. Perkins*, 282 So. 3d 727, 732 (¶21) (Miss. Ct. App. 2019). "The failure to cite any authority in support of [an] assignment of error [may] preclude[] us from considering [the] claim on appeal." *In re Est. of Mason*, 616 So. 2d 322, 327 (Miss. 1993); *accord Bell v. State*, 879 So. 2d 423, 434 (¶28) (Miss. 2004) ("Failure to cite relevant authority obviates the appellate court's *obligation* to review such issues."). "Additionally, when no 'meaningful argument' is given in support of an issue on appeal, 'the issue is considered waived.'" *Henderson v. Copper Ridge Homes, LLC*, 273 So. 3d 750, 758 (¶38) (Miss. 2019) (Kitchens, P.J., concurring). "[C]itation of some relevant authority—whether from other jurisdictions or secondary sources—is an important feature of appellate practice." *Id*. at (¶39) (citing M.R.A.P. 28(a)(7)). This issue has been waived.

¶17. Notwithstanding, the record reflects that the items had been inventoried. Rosemary concedes that she performed her own inventory in 2007. In fact, Rosemary's attorney told the chancellor in 2012 that Rosemary was satisfied with the inventories performed. In addition, Joan's will expressly grants the Executor the authority to decide which items in the Safe Room could be donated:

6

> I give and bequeath unto my Executor all of the certain artifacts of my late husband, Stuart A. Roosa, relating to the Apollo 14 moon launch, which I have not otherwise disposed of in my latest dated and signed separate outside listing. As to all such items bequeathed to my Executor, the Executor shall have the authority to donate any such artifacts, as my Executor shall choose, to the Stuart Roosa Foundation, and any such artifacts not donated to the Stuart Roosa Foundation shall be divided equally among my children, as my children shall decide.

¶18. Tracking the language of the will, the chancellor granted the Executor, Christopher, the authority to distribute the items in the Safe Room. In May 2020, Christopher designated all space artifacts to the Stuart Roosa Foundation. This issue is without merit.

## II. Validity of the Inter Vivos Gift

¶19. Rosemary next argues that Christopher's donation of the space items to the Foundation constituted an invalid inter vivos gift because the Foundation did not accept the items and Christopher did not deliver them. *In re Est. of Ladner*, 909 So. 2d 1051, 1054 (¶9) (Miss. 2004) (citing *In re Est. of Holloway*, 515 So. 2d 1217, 1223 (Miss. 1987), *superseded on other grounds*, Miss. Code Ann. § 81-5-63 (Rev. 2015)).

¶20. We first take a moment to note that the Foundation has not been made a party to this appeal. Although not required, joinder of the Foundation as a party may have proved helpful to the factual development of Rosemary's argument.[2] *See, e.g.*, M.R.A.P. 10(f) (explaining that parties may add to the record, when necessary, "to convey a fair, accurate, and complete account" of the trial court proceedings as related to the issues on appeal). Since the

---

[2] Under our law, the Foundation is not a necessary, interested party because the Foundation did not have a "direct, pecuniary interests [that would have been] either detrimentally or advantageously affected by the probate of the will." *Garrett v. Bohannon*, 621 So. 2d 935, 937 (Miss. 1993).

Foundation has not been made a party, the record does not reflect whether the Foundation "accepted" the Safe Room items and we decline to make that determination here.

¶21. In any event, the chancellor did not address whether the donated items constituted an inter vivos gift, or whether it was necessary for the Foundation to accept them. "With respect to issues of fact where the chancellor made no specific finding, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee." *Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983); *see also Harris v. Bailey Ave. Park*, 202 Miss. 776, 791, 32 So. 2d 689, 694 (1947); *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990); *Cheek v. Ricker*, 431 So. 2d 1139, 1143-44 (Miss. 1983). This is due in part because "there is no discretionary ruling for this Court to review." *Hoffman v. Hoffman*, 270 So. 3d 1121, 1129 (¶32) (Miss. Ct. App. 2018). By analogy, when a chancellor has not made a specific ruling, the appellate court is prevented "from applying the appropriate standard of review." *Id.* (internal quotation marks omitted) (citing *Alexander v. Daniel*, 904 So. 2d 172, 183 (¶25) (Miss. 2005)).

¶22. It is the litigant's duty to request specific findings when necessary. And when the appellant fails to request the specific finding, the appellant waives the issue on appeal. *Howell v. May*, 983 So. 2d 313, 321 (¶28) (Miss. Ct. App. 2007); M.R.C.P. 52(a) ("In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.").

¶23. In this instance, after the chancellor deemed all the items in the Safe Room donated to the Stuart Roosa Foundation, Rosemary argued that the donation was not complete

8

because it did not meet all the requirements of a valid inter vivos gift. The chancellor closed the estate without addressing this argument. Rosemary did not request specific findings. Consequently, Rosemary waived this issue on appeal.

¶24. Notwithstanding, the record reflects that the Safe Room and the Stuart Roosa Foundation occupied the same address. Undoubtedly, it would have been fruitless for the chancellor to require Christopher, in order to effectuate delivery, to remove the items from the Safe Room (Joan's closet), only to immediately place the items back in Joan's home (the address of the Stuart Roosa Foundation).

¶25. Again, we presume the chancellor resolved the factual issue of whether Christopher delivered the items to the Foundation in favor of Christopher. *See Cotton*, 435 So. 2d at 685. The chancellor deemed the space items as having been donated to the Stuart Roosa Foundation. Therefore, we are left to conclude that the acceptance and delivery requirements of an inter vivos gift were met, and we affirm the chancellor's order. *In re Last Will and Testament of Kistler*, 22 So. 3d 1209, 1214 (¶13) (Miss. Ct. App. 2009). Accordingly, we affirm the chancellor's order closing the estate.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

9