523 So.2d 324 (1988)
FITZNER PONTIAC-BUICK-CADILLAC, INC.
v.
Vertis B. SMITH.
No. 57901.
Supreme Court of Mississippi.
April 13, 1988.
*325 Robert B. Prather, Columbus, for appellant.
J. Tyson Graham, Graham & Segrest, Columbus, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the court:

I.
This case is about Buyer's efforts to recover what he paid for a used car which he kept 291 days and never gave Seller a chance to fix. Conceding the car's not infrequent illnesses over that time to have rendered it nonmerchantable, the economic waste avoidance policy within our law still required that, as a prerequisite to revocation of acceptance, Buyer afford Seller a reasonable opportunity for cure. As Buyer did not do this, his suit fails. We reverse and render.

II.
It all happened in Columbus. On November 3, 1983, Vertis B. Smith discussed with Eric Manning, a salesman for Fitzner Pontiac-Buick-Cadillac, Inc., the purchase of a used automobile. Smith was the Plaintiff below and is the Appellee here. Fitzner was Defendant below and is the Appellant here.
Manning showed Smith a 1982 Oldsmobile Cutlass. Smith took the car for a test drive. Smith then told Manning that there was a rattle in the car and that, if Fitzner would fix the rattle and paint the car, he (Smith) would purchase it. Manning agreed to these terms and said that, when he turned the car over to Smith, "it'd be in first class condition." The purchase price of the car was $7,475.00.
The record reflects that the car had had at least two prior owners. At the time of purchase the car had about 7,600 miles on it. E.H. (Buck) Bishop had purchased the car from Fitzner in February of 1983. Bishop's son had run the car over a curb and into a ditch, but Fitzner's repair shop had repaired it to his satisfaction. Billy Richardson testified that he had purchased the car from Doyle's Auto Sales when it had 6,000 miles on it. He had no trouble with the car but traded it because his wife didn't like it.
Smith owned and used the car from November 3, 1983, until the day of trial, August 26, 1986. On March 15, 1984, the car needed repair to the intake gasket and Smith had this done at a cost of $104.58. On May 28, 1984, Smith paid AAMCO Transmissions $640.02 for a new transmission. On June 12, 1984, Smith put a radiator in the car at a cost of $102.64. Smith said there were other problems with the car including a broken tail light and one window adjustment. More seriously, Smith said the car would stall frequently in traffic and that it got only eleven miles per gallon of gas.
None of the repairs described above except those to the tail light and window, were made by Fitzner. Smith testified that other persons did these repairs, and acknowledged that he did not understand that the car carried any warranty with it.
On August 20, 1984, Smith delivered to Fitzner a written demand for reimbursement of his purchase price. This demand was refused. Smith kept the car and, insofar as we know, has continued to use it.
On May 31, 1985, Smith commenced this civil action by filing his complaint in the Circuit Court of Lowndes County, Mississippi, naming Fitzner Pontiac-Buick-Cadillac, Inc. as Defendant. Smith sued on theories of express and implied warranties and asked that he be allowed to revoke the contract, return the vehicle to Fitzner and that Fitzner return the $7,475.00, the price Smith had paid for the vehicle and, in addition, *326 reimburse him for $847.72, being the cost of repairs he had incurred.
The case was called for trial on August 26, 1986. After Fitzner's motions for directed verdict were overruled, the case was submitted to the jury on alternative theories of express warranty and implied warranty of merchantability. The jury returned a general verdict for Plaintiff, Vertis B. Smith, and assessed his damages in the sum of $7,475. Fitzner timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial or, in the alternative, for a remittitur of the verdict. This alternative motion was denied on September 10, 1986. Fitzner now appeals to this Court.

III.

A.
Two of the assignments of error are challenges to the sufficiency of the evidence to support the verdict of the jury. Our scope of review in such contexts is as limited as it is familiar. We consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. See, e.g., Rester v. Morrow, 491 So.2d 204, 211-12 (Miss. 1986); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).

B.
Fitzner argues that the Circuit Court erred when it submitted the case to the jury on an express warranty theory. Here, Fitzner assigns error in the Circuit Court's refusal to sustain so much of his motion for judgment notwithstanding the verdict as challenged Smith's express warranty theory.
The facts are these. There was no written warranty. Fitzner offered Smith an extended warranty for an additional consideration, but he turned it down. One of Smith's reasons for not taking the automobile back to Fitzner in conjunction with the gasket, the radiator and the transmission and carburetor problems was that Smith was of the view that it was not covered by any warranty.
Smith's express warranty claim is this: On November 3, 1983, Smith asked that two things be done to the car before he purchased it. First, he asked that the car be painted; second, he asked that a rattle be fixed. The express warranty, if it existed at all, arose from the following colloquy between Smith and Manning (taking Smith's trial description of it):
Q. Okay, after you bought the car did you talk to anyone about it before you bought it other than Eric Manning?
A. No, sir.
Q. Okay, what did Mr. Manning tell you about the car when he sold it to you?
A. Whenever I told him about  well I carried it  had to go  we noticed a rattle in it whenever we tried it out and we told him about that and I told him that if they would do the painting why then I would buy the car, and he said the car would be in first class shape when they turned it over to me. [Emphasis added]
This is what  and all  Smith's express warranty claim rests on.
The legal standards by which such a claim is judged emanate from Article 2 of the Uniform Commercial Code as enacted in this state. Miss. Code Ann. § 75-2-313(1)(a) (1972). There we find it provided that:
Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
Such a warranty may be verbal as well as written. Moreover, we are concerned not so much with what the seller intended as *327 with what he said. We seek the meaning of what was said in the accessible objective world. This includes what Smith had said to Manning in the course of the negotiations.
On the other hand, our law provides that
An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
Miss. Code Ann. § 75-2-313(2) (1972).
There are two reasons why Smith's express warranty claim fails. In the first place, the only warranty language ever used was the "first class shape" representation Manning made. But this was after Smith had agreed to purchase the vehicle on the condition that the car be painted and the rattle fixed. Even assuming that "first class shape" was an affirmation of fact or promise, and thus a warranty, it was not "part of the basis of the bargain" within Section 75-2-313(1)(a). This fact is confirmed by Smith's admission  on the witness stand and by his post-purchase conduct  that he did not consider that the car was under warranty.
Second, there is no evidence that this particular warranty, if it be such, was breached. In the context of the facts recited above, the warranty can only be said to relate to Smith's concerns about the painting and the rattle in the car. Smith can only reasonably have understood Manning's representation as one to the effect that these two matters would be dealt with. The record reflects without contradiction that Fitzner did in fact have the vehicle painted and fixed the rattle. In this context, the express warranty claim fails because there is no evidence that Fitzner breached the express warranty.
When all is said and done, there is little in the way of dispute regarding the controlling facts here. Accepting our limited scope of review, we have little hesitation holding that Smith's express warranty claim fails as a matter of law. The Circuit Court erred when it submitted that claim to the jury. It erred when it refused to grant Fitzner's motion for judgment notwithstanding the verdict on that issue.

IV.
Smith's alternative theory of recovery was implied warranty of merchantability, i.e., that the vehicle was reasonably fit for the ordinary purpose of providing transportation. See Miss. Code Ann. § 75-2-314(1) (1972). On appeal, Fitzner assigns error in submission of the implied warranty theory to the jury and offers two reasons in support.
Fitzner's first point  that the implied warranty of merchantability has no application to used motor vehicles  may be dispatched quickly. Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 675-76 (Miss. 1987) held to the contrary. The essential point is that the word "goods" in Section 75-2-314(1) is not qualified. Put otherwise, we find no wording in the statute which distinguishes between new goods and used goods and excludes the latter.
Fitzner's second point is more serious for he argues that he was never given an opportunity to cure the claimed defects. The point involves a rather careful consideration of the applicable provisions of the (UCC's) Sales Article.
Without question, Smith had accepted the automobile, not necessarily on November 3, 1983, but when he failed to make an effective rejection after having had a reasonable opportunity to inspect it. Miss. Code Ann. §§ 75-2-601(b) and -606(1)(b) (1972); Rester v. Morrow, 491 So.2d 204, 209 (Miss. 1986). Smith's acceptance was reasonably induced by the difficulty of discovery of defects before acceptance. Miss. Code Ann. § 75-2-608(1)(b) (1972); Rester v. Morrow, supra, 491 So.2d at 209. See also J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851, 860 (Miss. 1986).
Smith later tried to get out of his deal with Fitzner. This occurred on August 20, 1984, when Smith delivered to Fitzner a letter "rejecting the contract" and telling Fitzner he "wanted... [his] money back." At this point Smith had no right of rejection. He had at most a right to revoke his *328 acceptance. Miss. Code Ann. § 75-2-608 (1972). In such circumstances, though there may have been a breach of the warranty of merchantability, the seller has a right to attempt cure.[1]Cf. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., ___ So.2d ___, ___ (Miss. No. 56,389, dec. Aug. 19, 1987) (not yet reported).
In Rester v. Morrow, the buyer repeatedly brought his automobile back to seller and sought repairs. Equally as repeatedly, the repair efforts failed. In Rester we held that the seller's right to attempt cure was not without limit, that there comes a point where the buyer is not required to continue returning the car to the seller and experiencing the attendant inconveniences of having his car out of operation. In Rester the seller had been given a reasonable opportunity to effect cure but had failed.
The present facts are otherwise. The first time Smith gave Fitzner notice that he considered the automobile defective, i.e., non-merchantable, was August 20. In the case of the prior problems with the intake gasket, the radiator and the transmission, Smith had taken the automobile to someone else for repair. Smith argues that Fitzner's right of cure should not be considered and would have us believe Fitzner had declared in no event would he have considered cure. As we appreciate Fitzner's testimony, he takes the point of view that the vehicle was not subject to any warranty, but that if under the facts the problem was something that had "escaped us and we thought he deserved it, we would try to help him."
Assuming arguendo that Smith had grounds for revocation of his acceptance,[2] Smith nevertheless had a duty to afford Fitzner a reasonable opportunity to cure the automobile's ills. Such opportunity for cure was a reasonable requisite of Smith's right of recovery. Rester v. Morrow, supra, 491 So.2d at 210; see note 1, supra. What Smith did on August 20 was not an offer of opportunity for cure or even a demand for cure but rather an unconditional insistence that the contract be deemed rejected once and for all and that Smith be given his money back. Fitzner declined this demand, and insofar as the record reflects, Smith has continued to use the car through and including the date of trial in August of 1986 (with, or without, further difficulties, we do not know). See J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851, 860 (Miss. 1986).
Though the evidence be considered most favorably to Smith, we have before us no basis upon which a reasonable fact finder may have concluded that Smith afforded Fitzner a reasonable opportunity to effect cure of the vehicle's ills. This being so, the Circuit Court erred when it submitted the implied warranty claim to the jury. Judgment notwithstanding the verdict should have been granted Fitzner on that issue.
REVERSED AND RENDERED
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents.
PRATHER, J., not participating.
NOTES
[1] We recognize that a strict reading of the cure provisions of Miss. Code Ann. § 75-2-508 (1972) reveals no explicit application to the revocation situation with which we are here concerned. See Asciolla v. Manter Oldsmobile-Pontiac, Inc., 117 N.H. 85, 370 A.2d 270, 274 (1977); Note, Commercial Law  The Effect Of The Seller's Right To Cure On The Buyer's Remedy Of Rescission, 28 Ark.L.Rev. 297, 301 (1975); Note, Uniform Commercial Code  Sales  Sections 2-508 and 2-608  Limitations On The Perfect Tender Rule, 69 Mich.L.Rev. 130, 145-46 (1970). The law's policy of minimization of economic waste strongly supports recognition of a reasonable opportunity for cure. Though the express language of Section 75-2-508 does not apply here, cure is not excluded by Section 75-2-608. By analogy to Section 75-2-508 and in furtherance of the policy justification undergirding that statute and our common law doctrine of cure in contracts generally, we recognize that, before Smith was entitled to get his money back, Fitzner had a right to a reasonable opportunity to cure the vehicle's deficiencies.
[2] Our limited scope of review requires that we accept the jury's implicit finding that the automobile was non-merchantable. There was enough evidence of things going wrong that a reasonable jury could well have so found.