KING, P.J., for the Court:
¶ 1. The Lafayette County Circuit Court entered judgment, in the amount of $ 9, 937.05, for Bobby Herring d/b/a Herring Electrical and Plumbing against Byrd Brothers, LLC on an open account pursuant to Mississippi Code Annotated Section 11-53-81. Byrd Brothers’ counter-claim, which alleged breach of contract and slander of title by Herring Plumbing, was disr-missed. Aggrieved, Byrd Brothers perfected its appeal and raised several issues. This Court finds what was identified as issue III, to be dispositive of this case. This Court has restated that issue as:
•I. Whether Byrd Brothers was required to allow Herring to repair defective work, and if so was Herring given the opportunity to repair defective items ?
FACTS
¶ 2. Byrd Brothers, LLC is a construction company based in DeSoto County, Mississippi; its principals are three brothers, Tim,. Terry, .and Billy Byrd. Bobby Herring d/b/a/ Herring Plumbing and Electric is an electrical and plumbing company based in Pontotoc County, Mississippi. Byrd Brothers contracted with Herring to perform plumbing work on Sage Meadows, a condominium complex located on Anderson Road in Lafayette County, Mississippi. The contract called for Herring to be paid $1,980 per unit for the plumbing work, including all labor and materials, but not fixtures, in fourteen condominiums at Sage Meadows. This sum was to be .paid in three installments. Herring and his crew began work on the units in February of 2000 shortly after the contract was signed.
¶ 3. Not long after work began, problems developed between the parties. Initially, the parties disagreed over whether “plumbing” as used in the contract includ *1072 ed installation of gas and gas fixtures. Byrd contended that it did, while Herring contended that it did not. The parties resolved this issue by an agreement that Byrd would pay Herring $100 per gas opening installed, with the exception of the first four units, in which Herring agreed to install gas free of charge.
¶ 4. Tim Byrd’s daily monitoring of the work at Sage Meadows was also a source of discord. Tim Byrd requested that Herring Plumbing correct some items which were done improperly, such as vent pipes on water heaters, pipes and stub-outs that were “off a little bit,” and the flashing of the vents. Tim Byrd also raised questions with Bobby Herring about the installation of “look alike” fixtures and a general shoddiness of work. Herring’s reaction was to tell Byrd that he was “being too picky.” After constantly having these problems brought to his attention by Tim Byrd, some of the problems were fixed. This caused a further deterioration of the relationship. Recognizing this deterioration, Tim Byrd and Billy Byrd called Bobby Herring after the first phase of the condominiums was completed to discuss how things were going. According to Byrd, Herring promised that things would get better if Herring Plumbing were allowed to finish the next phase of the condominiums.
¶ 5. Billing problems also surfaced between the parties. During phase three of the project, Bobby Herring submitted a set of invoices to Tim Byrd and requested immediate payment. Byrd stated that he could not make “heads or tails,” of the invoices, and therefore requested that Herring submit invoices for each unit. Within an hour, Herring revised the invoices and was issued a check for the requested sum. Later, Tim Byrd checked the invoices and discovered what he felt was some double billing and bill padding. He then issued a stop payment order on the check.
¶ 6. About this same time, Herring Plumbing was asked off the job site by Billy Byrd. Later, Tim Byrd called Bobby Herring to discuss concerns about the quality of the work and to request that Herring Plumbing return to correct the problems and complete the balance of the work. Bobby Herring declined to even discuss a return to the job unless Byrd was prepared to immediately pay him some money. When Byrd insisted that they should at least sit down and discuss the work, Herring declined to do so and chose not to return.
¶ 7. Herring filed suit in the Circuit Court of Lafayette County against Byrd Brothers seeking damages of $21,836.77.
¶ 8. Byrd Brothers filed a counter-claim for damages it suffered due to Herring’s defective workmanship. Byrd Brothers alleged that it would have owed Herring Plumbing $9,937.05 if it had properly performed the contract. However, Byrd Brothers contends that it was required to spend approximately $14, 580.95, in mitigation of damages due to Herring’s defective work and it was therefore owed $4,621.25 by Herring.
¶ 9. Byrd Brothers employed William Sloane to correct and complete Herring’s work. Sloane testified that all licensed plumbers are required to comply with the Southern Building Code, and that Herring’s work did not comply with the code. Among the failures identified by Sloane were some toilets that were loose and had to be taken up and reset, because they rocked from side to side, tub spouts that were too far from the wall, which had to be removed and replaced, and the placement of plastic drain pans under the water heaters.
*1073 ¶ 10. Byrd Brothers also offered the testimony of Mike Chaney, a plumbing expert. According to Chaney, Herring’s workmanship was generally shoddy and inconsistent. Among the examples of defective workmanship noted by Chaney were the following: stub-outs for installing commodes done incorrectly, making it impossible to set the commodes level, rough-ins which did not fit plan dimensions, improper openings for shower fixtures, and cedar chips placed under the commode to keep it level.
¶ 11. Using a videotape and photographs, Chaney pointed out specific examples of shoddy workmanship by Herring. He noted that the sealant mandated by the code to prevent leaks was not used in at least one apartment. Because the piping in the other apartments had been enclosed in the wall, he offered no testimony about them. Chaney pointed out the use of plastic pans, rather than metal, under the water heaters, in direct violation of the code. Chaney pointed out cracked concrete caused by Herring’s having to take up and reset a commode which was not level, “look alike” fixtures, rather then the contractually specified Delta fixtures, and water heater vent pipes in contact with the wood behind the heater.
¶ 12. In viewing the video, Bobby Herring acknowledged that some of Herring Plumbing’s work failed to meet mandatory code requirements.
¶ 13. On July 2, 2002, the trial judge entered judgment in favor of Herring Plumbing and Electric against Byrd Brothers in the amount of $9,937.05. This was the amount that Byrd Brothers submitted that it would have owed Herring had he completed the work; however, this amount was never contended as damages by Herring. The trial judge in his opinion stated “because the defendant failed to offer or allow the Plaintiff the opportunity to correct any deficiencies, the Defendant is not entitled to any offset or deduction.” Aggrieved by this decision Byrd Brothers perfected its appeal.
ISSUE AND ANALYSIS
Whether Byrd Brothers was required to allow Herring to repair defective work, and if so was Herring given the opportunity to repair defective items ?
¶ 14. This Court’s applicable standard of review is found in Amerson v. State, 648 So.2d 58, 60 (Miss.1994): For findings of a trial judge sitting without a jury, this Court will reverse only where the findings of the trial judge are manifestly erroneous or clearly wrong. “A judge sitting without a jury has sole authority for determining credibility of the witnesses.” Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987).
¶ 15. A party who has breached or failed to properly perform a contract has a responsibility and a right to cure the breach. Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So.2d 324, 328 (Miss.1988). The non-breaching party must give him a reasonable opportunity to cure the breach. Id. However, the right to cure is not unlimited. Rester v. Morrow, 491 So.2d 204, 210 (Miss.1986).
 ¶ 16. Where the breach is a material one, the non-breaching party has a right to end the contract, UHS-Qualicare, Inc., UHS of the Gulf Coast, Inc., and Qualicare Sub., Inc., et al. v. Gulf Coast Cmty. Hosp., Inc., et al., 525 So.2d 746, 756 (Miss.1987), but in doing so he is also obligated to minimize his damages. Fitzner Pontiac-Buick-Cadillac, Inc., 523 So.2d at 328. Likewise, when the conduct of the breaching party has been of such a nature as to cause a loss of confidence or “shaken faith,” the offended party is entitled to end the contract, Rester v. Morrow, *1074 491 So.2d 204, 210 (Miss.1986), but he remains responsible for mitigating damages.
¶ 17. The record before this Court indicates that Herring was given the opportunity to cure his breach of contract. Tim Byrd was at the construction site on a daily basis identifying contractual breaches and inviting Herring to cure them. Rather than exercising his right and obligation to cure, Herring would gripe and claim that Byrd Brothers was “being too picky.” Herring’s conduct led to such a deterioration of the working relationship, that his workers were asked to leave the job site. When contacted by Tim Byrd to return to work, correct the problems and complete the contract, Herring declined.
¶ 18. The relationship was further exacerbated when Byrd Brothers questioned what it perceived to be Herring’s double billing and over billing.
¶ 19. Clearly, Herring was given several opportunities to cure his repeated contractual breaches, but did not do so. Having given Herring a reasonable opportunity to cure, Byrd Brothers was entitled to, and obligated to move forward and mitigate damages. Fitzner Pontiac-Buick-Cadillac, Inc., 523 So.2d at 328.
¶ 20. As the trial court correctly found, Herring was entitled to compensation for work done under the contract. However, the trial court incorrectly measured Herring’s entitlement. The trial court awarded Herring the balance of the contract price. What Herring was entitled to was the balance of the contract price less the reasonable costs of mitigation of damages incurred by Byrd Brothers. The Sumrall Church of the Lord Jesus Christ v. Johnson, 757 So.2d 311, 313(¶ 3) (Miss.Ct.App.2000).
¶ 21. Finding error, we reverse and remand for a new trial. Our disposition of this issue renders moot the other issues raised on appeal.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS ARE TAXED TO THE AP-PELLEE.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.