# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
## NO. 2019-CA-01098-COA

JOHN E. WINTERS                                                          APPELLANT

v.

ERIC FENG                                                                 APPELLEE

DATE OF JUDGMENT:                    06/27/2019
TRIAL JUDGE:                         HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:           HINDS COUNTY CIRCUIT COURT,
                                     FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:             RICHARD R. GRINDSTAFF
                                     BRYCE CHRISTIAN KUNZ
ATTORNEYS FOR APPELLEE:              JOE S. DEATON III
                                     RICHARD JASON CANTERBURY
NATURE OF THE CASE:                  CIVIL - INSURANCE
DISPOSITION:                         AFFIRMED - 11/10/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### McDONALD, J., FOR THE COURT:

¶1.     This appeal arises from the Hinds County Circuit Court's judgment affirming the

Hinds County County Court's grant of summary judgment for Feng in a lease dispute and an

award to him of attorney's fees.  John E. Winters and Eric Feng entered into a commercial

property lease agreement, which, among other things, required Feng to provide Winters with

a liability and property insurance policy that listed Winters as an additional insured.  Feng

provided Winters with a Certificate of Liability Insurance (Certificate) with the insurance

coverage listed.  Winters thought that the Certificate was insufficient and terminated the lease

agreement.  When Feng did not vacate the leased premises, Winters filed a complaint for

unlawful detainer against Feng in the Hinds County County Court based on Feng's failure to comply with the insurance requirements. Feng moved for summary judgment, which the county court granted after finding that Feng's Certificate provided sufficient proof of insurance. The county court also awarded Feng attorney's fees. Winters appealed to the First Judicial District of the Hinds County Circuit Court, which affirmed the county court's judgment. Winters now appeals from the circuit court's judgment. After a review of the record and the parties' briefs, we find that the circuit court did not err in affirming the county court's order granting Feng's motion of summary judgment and awarding attorney's fees.

**Statement of the Facts and Procedural History**

¶2. On August 28, 2015, Winters and Feng entered into a written lease agreement by which Feng leased from Winters certain commercial property located in Lowndes County, Mississippi. Although the lease agreement at issue began on September 1, 2015, the parties had had prior leasing agreements for the same property since 1994. Paragraph 9 of the lease agreement required Feng to secure commercial umbrella insurance in the amount of $1.5 million and property insurance:

> (9) LESSEE shall provide and keep in force at its own expense during the term of this Lease, or during any option period a commercial umbrella liability insurance policy. The insurance coverage to be provided by the LESSEE shall contain a limit of not less than ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00) with an insurance company that has, at minimum, an A+ Am Best Insurance Rating naming the LESSOR as the insured. The coverage limit shall be adjusted every FIVE (5) YEARS, as per inflation rate. The LESSEE will provide annually to LESSOR a certified copy of the commercial umbrella liability policy or upon each renewal policy period.

LESSOR shall have no obligation to provide any of the insurance required by this Lease, but LESSOR shall be shown as an additional insured on all policies of insurance required by this Lease.

The LESSEE will provide at its own expense full coverage insurance for the existing building and improvements in the demised premises along with full coverage for other buildings and improvements that may later be placed thereon by LESSEE with policy coverages for full replacement cost, naming the LESSOR as the insured. The LESSEE will provide annually to LESSOR a certified copy of the insurance policy or upon each renewal policy period. The LESSOR agrees, upon settling any insurance claims that are covered by insurance, to have all damages to building(s) or other improvements repaired or reconstructed should the building(s) or any improvements be destroyed.

¶3.    Shortly after the lease agreement was executed, Feng subleased the commercial property to Arby's Restaurant Group Inc. (Arby's), which insured all of its fast-food restaurants under one global insurance policy, including both umbrella commercial liability and property coverage. Several months later, on or about December 7, 2015, Winters realized that he had not been provided with any policies and requested that Feng provide him with proof of insurance. To do this, Feng contacted Arby's, which, according to both Arby's representatives and Feng, provided Winters with both the Certificate and the insurance policy.

¶4.    The Certificate provided commercial umbrella liability coverage of $25,000,000, property coverage of $1,000,000, and listed Winters as an additional insured. Melissa Nuss, "Vice President of Lease Agreements, Risk & Administrative Services of Arby's Restaurant Group, Inc.," confirmed this coverage by affidavit. According to Nuss, the insurance policy was effective on August 31, 2015.

¶5.    According to an email dated January 8, 2016, from Niikol Young (Arby's supervisor

3

of lease administration), Winters received a copy of the policy and a Certificate, which stated:

> Our insurance carrier is going to schedule Mr. Winters as an additional insured via endorsement on our liability policy. The endorsement is an addition to the policy he has already received and is a 1 page document that will list him as an additional ensured. Please find out exactly how Mr. Winters wants to be listed so we can advise our carrier accordingly and they can complete the document. On the Master Lease his name reads John Everette Winters, please confirm this is how the endorsement should read.

But because Winters wanted both himself and his wife (who was not a party to the lease agreement) to be listed as insureds, the parties could not agree on the language of the endorsement.

¶6.     Although Feng provided the Certificate to Winters, Winters requested that Feng obtain additional insurance coverage for the property.  But Feng refused to do so because he believed the Arby's insurance policy was sufficient.

¶7.     On February 25, 2016, Winters sent Feng and Arby's an email stating that he purchased an insurance policy through State Farm for the property and requested reimbursement:

> Per Mr. Feng's email instructions,[1] I am mailing the attached billing statement for prompt full reimbursement payment to me for the annual premium of $6,959.00 for securing insurance for the above captioned leased property. As you will see, the coverage is good and the premium is quite competitive. The premium is $2,000.00 - $3,000.00 less than quotes I received from other agents. Enclosed, herewith, is a copy of the State Farm Insurance Binder Receipt. Kindly refer to Paragraph (9); Paragraph (18) and Paragraph (36) of the Lease Agreement as this will also serve as my "Thirty (30) Days" written notice. Thank you for your cooperation.

---

[1] This prior email is not in the record. But during Feng's deposition, he referenced that he sent Winters an email concerning the reimbursement.

4

In the email, Winters referred to the previously mentioned paragraph 9 as well as paragraphs 18 and 36 of the lease agreement. Paragraph 18 read:

> (18) **The occurrence of any of the following shall be an event of default hereunder.** (a) Should LESSEE default in paying any installment or rental hereunder and such default continues for THIRTY (30) days after written notice of such default from LESSOR; (b) Should LESSEE default in paying any other sum to be paid by LESSEE hereunder and fail to pay the same within THIRTY (30) days after written notice of such default from LESSOR; or (c) Should LESSEE default in performing any of the other terms, provisions and covenants of this Lease and fail within THIRTY (30) days after written notice from LESSOR to cure such default or as to any default not curable within such THIRTY (30) day period should LESSEE fail to institute appropriate action to cure such default within such THIRTY (30) day period and thereafter prosecute such action with due diligence and continuity.

Paragraph 36 stated, "Time is of the essence in all of the provisions of this Lease." Again, Winters wrote that the email served as his thirty-day written notice as required by paragraph 18 in the lease agreement.

¶8. According to Winters, Feng never reimbursed him for the State Farm insurance policy. Pursuant to paragraphs 19 and 26 of the lease agreement, Winters sent a letter to Feng on March 26, 2016, terminating the lease. Paragraphs 19 and 26 of the lease respectively provided:

> (19) Upon the occurrence of any event of default, then LESSOR may at its option: (a) Terminate this Lease by written notice to LESSEE whereupon this Lease shall end; (b) As LESSEE'S agent, without terminating this Lease, enter upon or rent the demised premises at the best price attainable by reasonable effort, without advertisement, and by private negotiations, for any term LESSOR deems proper. LESSEE shall remain Liable to LESSOR for the deficiency, if any, between the rental and other sums payable by LESSEE hereunder and the rent obtained by LESSOR on re-letting, after deducting any attorneys' fees, commissions and other expenses paid by LESSOR with respect to such re-letting.

5

. . . .

(26) . . . The time and date on which mail is postmarked shall be the time and date on which communication is deemed to have been given.

Winters contended that Feng breached the lease agreement by not obtaining insurance for the property as required by the lease agreement. Therefore, Winters argued he was entitled to immediate possession of the property at issue, but Feng and his sublessee remained in possession of the property.

¶9. On May 19, 2016, Winters filed a complaint in the county court for unlawful detainer against Feng for Feng's failure to comply with the insurance requirements required under Paragraph 9 of the lease agreement. Winters requested that the county court grant him a writ for immediate possession and a judgment against Feng for the premium of the State Farm insurance policy, unpaid rent from the holdover period since the termination letter was sent, attorney's fees, and expenses.

¶10. On July 14, 2016, Feng answered the complaint by denying all of Winters's claims and filed a counter-claim stating that Winters (1) improperly and wrongfully terminated the lease agreement when Feng was not in default of the lease; (2) intentionally breached the contract and/or lease agreement between the parties; and (3) refused and rejected any and all payments for insurance premiums from Feng and/or Feng's sub-lessee in an effort to effectuate a default in the lease agreement.[2] Feng sought the following relief from the court: (1) denial of Winters's requests for relief; (2) judgment against Winters for the sum of the insurance policy, lost rental income, loss of income from business operations, attorney's fees,

_____

[2] Arby's reimbursed Winters for the additional State Farm insurance.

6

court expenses, costs of litigation, and any and all other damages shown at trial and allowed by law in Mississippi; (3) judgment granting Feng and/or his sublessee the right to remain in possession of subject property for the duration of the lease agreement; and (4) judgment against Winters for punitive damages because his alleged wrongful and improper breach of contract was intentional in manner.

¶11. Winters was deposed on December 2, 2016. During the deposition, Winters stated he did not believe the Arby's insurance policy provided him with coverage pursuant to the terms of the lease agreement. When he requested Feng to provide him with proof of insurance, Winters testified that he only received declaration pages via email. Moreover, Winters stated that there were issues that needed to be resolved, such as his wife being listed on the insurance policy. Winters also stated that "[m]y name wasn't in there, nowhere shown on the policy." Winters agreed that there was property insurance and liability insurance for the property, but he argued that he was not named as the additional insured, as the lease agreement required.[3]

¶12. Feng was deposed on December 13, 2016. During his deposition, Feng stated that he never personally sent Winters a certified copy of the insurance policy but that Arby's sent the insurance policy and the Certificate via email. When asked whether the insurance policy covered anything besides liability that arose out of operations of the Arby's unit, Feng answered that the premises were only used to conduct Arby's business. Therefore, Winters, as a named insured, was covered by Arby's insurance policy.

---

[3] Winters's belief was mistaken because the Certificate stated that "John Everette Winters is an additional insured."

¶13.   Feng filed a motion for summary judgment on February 6, 2017.  In his memorandum in support of the motion for summary judgment, Feng argued the following: (1) Arby's commercial general liability coverage and the property coverage exceeded the requirements of the lease agreement; and (2) Arby's Certificate indicated that Winters was both a certificate holder and an additional insured to both general liability and property coverage. Therefore, Feng contended there was no genuine issue of material fact regarding whether Winters was provided proper insurance coverage, as the lease agreement required.  Feng requested an award of attorney's fees, court expenses, and all other expenses related to the lawsuit pursuant to Paragraph 33 of the lease agreement, which provided:

> (33)  The Laws of Mississippi shall be controlling in any interpretation of the terms and conditions of this Lease. The venue for any lawsuit or any action involving this Lease shall be Hinds County, Mississippi. Both parties agree to the award of attorneys' fees, court expenses and all other expenses related to any lawsuit or any action involving this Lease.

¶14.   Winters responded to Feng's motion and filed a motion for summary judgment on February 13, 2017.  Winters argued that the Certificate was "self-defeating." Specifically Winters asserted that the Certificate (1) stated that it does not create a contract; (2) stated the policy must be endorsed but that no policy had ever been provided to him; and (3) limited the coverage to "liability arising out of the operations of the Arby's unit." Furthermore, Winters stated that neither Arby's nor Feng provided him with a certified or endorsed copy of the insurance policies or any other contract evidencing insurance coverage, as required by the lease agreement.

¶15.   On April 4, 2017, the county court granted Feng's motion for summary judgment for

the reasons set forth in his motion for summary judgment and dismissed all of Winters's claims with prejudice. The county court also awarded Feng attorney's fees in the amount of $9,986 and expenses totaling $250.56, to be paid within sixty days of entry of the order. Winters's motion for summary judgment was denied.

¶16. On April 13, 2017, Winters appealed to the Hinds County Circuit Court. In his brief to the circuit court, on August 18, 2017, Winters listed several issues; the two most significant issues were (1) whether the granting of Feng's attorney's fees and expenses was improper due to no itemization of attorney's fees or expenses, and (2) whether the lease agreement was terminated due to Feng's violation(s) of the terms under the lease. Winters argued that the county court's decision should be reversed because of prejudicial error and rendered in Winters's favor. Feng filed his response in the circuit court on October 13, 2017. Feng argued that the county court did not err in granting Feng's motion for summary judgment because he had provided proper insurance coverage to Winters as required by the lease agreement.

¶17. On June 21, 2019, the circuit court heard oral argument and, on June 27, 2019, entered a final order denying Winters's relief requested on appeal and affirming the county's court grant of summary judgment for Feng. The circuit court found that "no genuine issue of material fact existed upon which reasonable minds could differ." The circuit court further found that not only was Feng entitled to summary judgment, he was also entitled to the award of attorney's fees, court expenses, and all other expenses, including all fees and expenses associated with the appeal.

¶18. On July 2, 2019, Winters appealed from the circuit's court order, raising the following issues: (1) whether the lease agreement was terminated due to violation(s) by Feng under the terms of the lease agreement; (2) whether the circuit court erred in affirming the grant of Feng's attorney's fees and expenses without either the circuit or county court receiving any itemization of said attorney's fees and expenses; and (3) whether granting of Feng's attorney's fees and expenses was improper due to the incorrect ruling on the merits. We find that the circuit court did not err in affirming the county court's grant of Feng's motion of summary judgment and award of attorney's fees and expenses.

**Standard of Review**

¶19. "The grant or denial of a motion for summary judgment is reviewed de novo." *Reverie Boutique LLC v. City of Waynesboro*, 282 So. 3d 1273, 1277 (¶26) (Miss. Ct. App. 2019) (quoting *Estate of Hudson v. Yazoo City*, 246 So. 3d 872, 876 (¶29) (Miss. 2018)). "The evidence is viewed in the light most favorable to the party opposing the motion." *Id*. "Only if there is no genuine issue of material fact is the moving party entitled to summary judgment as a matter of law." *Id*. Questions of law also are reviewed de novo. *Id*.

**Discussion**

I.     **Whether Feng violated the lease agreement resulting in a lawful termination by Winters.**

¶20. The Mississippi Supreme Court has stated that a breach of contract case has two elements: (1) "the existence of a valid and binding contract," and (2) a showing "that the defendant has broken, or breached it." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 414 (¶43) (Miss. 2018) (quoting *Bus. Commc'ns Inc. v. Banks*, 90 So. 3d 1221, 1224

10

(¶10) (Miss. 2012)). The termination of a contract is only permitted if there is a material breach. *Watkins Dev. LLC v. Jackson Redev. Auth.*, 283 So. 3d 170, 174-75 (¶10) (Miss. 2019) (citing *Gulf S. Cap. Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966)). Further the Supreme Court has stated the following regarding a material breach:

> A breach is material when there "is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose," *Gulf South Capital Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966), or when "the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract," *Matheney v. McClain*, 248 Miss. 842, 849, 161 So. 2d 516, 520 (1964).

*Id.* (quoting *J.O. Hooker & Sons Inc. v. Roberts Cabinet Co.*, 683 So. 2d 396, 402-03 (Miss. 1996)). For leasing purposes, "a tenant's right to possession may not be conditioned on perfect performance of the lease but may be forfeited only upon a material breach or a violation of a substantial obligation." *Id.* (quoting 52 C.J.S. *Landlord & Tenant* § 189 (2019), Westlaw).

¶21. "A party who has breached or failed to properly perform a contract has a responsibility and a right to cure the breach." *Byrd Bros. LLC v. Herring*, 861 So. 2d 1070, 1073 (¶15) (Miss. Ct. App. 2003) (citing *Fitzner Pontiac-Buick-Cadillac Inc. v. Smith*, 523 So. 2d 324, 328 (Miss. 1988)). The non-breaching party must provide the other party a reasonable opportunity to cure the breach. *Id.* "The plaintiff bears the burden of proving material breach by a preponderance of the evidence." *Ladner v. Pigg*, 919 So. 2d 100, 102 (¶6) (Miss. Ct. App. 2005).

¶22. In the present case, Winters argues that Feng breached the lease agreement when he

11

did not obtain the proper insurance required.[4] The lease agreement required Feng to obtain commercial umbrella liability coverage and required Winters to be listed as an additional insured. Feng, through Arby's, complied with the insurance requirement and provided Winters with the Certificate. Evidence of sufficient insurance was shown in the Certificate. The United States Court of Appeals for the Fifth Circuit has held that "a certificate of insurance provides a method whereby a lessee can show that he has complied with a lease provision requiring that insurance be obtained by the lessee." *U.S. Pipe & Foundry Co. v. U.S. Fid. & Guar. Co.*, 505 F.2d 88, 89 (5th Cir. 1974). According to the Certificate, the property had $25 million in commercial umbrella liability coverage, far above the amount required in the lease, and Winters was listed as an additional insured. Additionally, Arby's representative Nuss testified that the insurance had been in effect since August 31, 2015, and that Winters was an additional insured.

¶23. Furthermore, Winters testified during his deposition that he received a copy of the Certificate and declaration pages prior to obtaining the additional State Farm insurance. Moreover, had there been a necessity to cure any breach, the record indicates that Winters did not give Feng thirty days to do so, as the lease agreement required. We find that Feng secured the necessary insurance coverage and provided Winters with the appropriate insurance. Therefore, because the Certificate provides proof of sufficient insurance

---

[4] Winters failed to cite any legal authority pertaining to whether he was provided with sufficient insurance. This court has held that "[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal." *Herrin v. Perkins*, 282 So. 3d 727, 733 (¶21) (Miss. Ct. App. 2019) (quoting *Fisher v. Miss. Dep't of Emp't Sec.*, 176 So. 3d 141, 143 (¶8) (Miss. Ct. App. 2015)). Notwithstanding the procedural bar, we find that Feng did not violate the lease because he provided Winters with proof that the property was insured.

12

coverage, Feng did not fail to perform a substantial requirement of the contract. This issue is without merit, and the circuit court's judgment on this issue is affirmed.

> II.    **Whether the circuit court erred in affirming the county court's grant of Feng's attorney's fees.**

>> A.    **Attorney's Fees for County and Circuit Court Proceedings**

¶24.    Winters requests that the award of damages, attorney's fees, and expenses be remanded to the circuit court. He alleges specifically that (1) the circuit court erred in affirming Feng's attorney's fees award because of incorrect ruling on the merits, and (2) the circuit court erred in affirming Feng's attorney's fees awards without the circuit or county court receiving any itemization of the attorney's fees. "The typical standard of review of an award of attorney's fees is abuse of discretion." *Mark S. Bounds Realty Partners Inc. v. Lawrence*, 34 So. 3d 1224, 1227 (¶8) (Miss. Ct. App. 2010) (quoting *Bailey v. Estate of Kemp*, 955 So. 2d 777, 787 (¶41) (Miss. 2007)).

¶25.    Mississippi Code Annotated section 9-1-41 (Rev. 2014) provides the following regarding attorney's fees:

> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

"Attorney's fees are a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *M&R*

13

*Builders LLC v. Williams Equip. & Supply Co.*, 281 So. 3d 320, 342 (¶82) (Miss. Ct. App. 2018) (quoting *Falkner v. Stubbs*, 121 So. 3d 899, 903 (¶15) (Miss. 2013)). "[A] contractual provision to pay attorney's fees is not a blank check; it is limited by the reasonableness of the fee [that] includes an analysis of whether work performed was actually necessary." *Berlin v. Livingston Prop. Owners Ass'n Inc.*, 232 So. 3d 148, 159 (¶33) (Miss. Ct. App. 2017) (citation omitted).

¶26.   The reasonableness of the fee is determined by the criteria contained in Rule 1.5(a) of the Mississippi Rules of Professional Conduct, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Bailey Law PLLC v. Morgan & Morgan PLLC (In re Estate of Bourne)*, 282 So. 3d 796, 805 (¶29) (Miss. Ct. App. 2019).

¶27.   This Court cannot say that the trial courts' award of attorney's fees to Feng was unreasonable.  In *Berlin v. Livingston Property Owners Ass'n Inc.*, 232 So. 3d 148 (Miss. Ct. App. 2017), this Court stated that "[a]lthough a chancellor generally should provide some on-the-record analysis of the factors set out in Rule 1.5 of the Rules of Professional Conduct, the failure to do so is not per se reversible error, and the chancellor's award may be upheld so long as the amount is not unreasonable."  *Id*. at 159 (¶34) (citing *West v. West*, 88 So. 3d

14

735, 747 (¶58) (Miss. 2012)). In *Berlin*, we found that the circuit court did not abuse its discretion by awarding attorney's fees without a hearing or additional finding of facts given the history of the case. *Id.* at (¶35). The owners association had provided an affidavit in support of attorney's fees and expenses, which amounted to $17,485.58. *Id.* We noted that the case was pending for five years, involved multiples depositions, a trial, and several motions. *Id.* Therefore, although the circuit court did not provide a full analysis of the reasonable factors, we did not find the award of attorney's fees reversible error. *Id.*

¶28. Significantly, in the present case, the parties specifically agreed to the payment of attorney's fees and expenses in the lease agreement if a legal dispute arose between them. Paragraph 33 of the lease agreement stated that "[b]oth parties agree to the award of attorneys' fees, court expenses and all other expenses related to any lawsuit or any action involving this Lease." To support his request for attorney's fees, Feng provided an affidavit from his attorney which stated:

> The Defendant has incurred attorneys' fees in the amount of $9,986.00 and expenses totaling $250.56 which is reasonable under the circumstances considering the usual and customary charge in the community, the time and labor required to defend the claim and the nature of the case.

The statute stated that the court should have all the documentation before it and use its own opinion, based on experience and observation, to determine the appropriate amount of attorney's fees. Miss. Code Ann. § 9-1-41. We find that the lower court followed the statute. Feng provided an affidavit, which stated the amount of attorney's fees. We note that the case was pending for about one year in the county court before being appealed to the circuit court and now here. A complaint and answer were filed. There was a request for interrogatories,

15

a request for production of documents, and requests for admission. Depositions of the plaintiff and the defendant were taken. Feng filed a motion for summary judgment, which Winters answered in opposition, and Feng filed a rebuttal. Feng's attorney prepared an affidavit, stating his attorney's fees in the amount of $9,986 and expenses totaling $250.56. The parties clearly agreed to attorney's fees pursuant to the lease agreement. This Court cannot say that the sum of $9,986 was unreasonable. The failure to not make an on-the-record analysis of the Rule 1.5 reasonableness factors is not per se reversible error. Therefore, the circuit court did not abuse its discretion in affirming the county court's award of attorney's fees for Feng.

### B. Attorney's Fees on Appeal

¶29. Feng also requests attorney's fees which were incurred as a result of this appeal. The Mississippi Supreme Court has stated that "[w]hen a prevailing party requests attorneys' fees on appeal, typically, the Court awards attorney fees on appeal in an amount equal to half the amount awarded at trial." *Latham v. Latham*, 261 So. 3d 1110, 1115 (¶23) (Miss. 2019) (citing *Huseth v. Huseth*, 135 So. 3d 846, 861 (¶47) (Miss. 2014)). But in *Latham*, the Court held that request for appellate attorney's fees must be made in a motion that complies with Mississippi Rule of Appellate Procedure 27(a).[5] *Id*. at 1116 (¶23). Feng has not filed such a motion. Therefore, we decline to consider Feng's request at this time.

### Conclusion

---

[5] Rule 27(a) states that "[u]nless another form is elsewhere prescribed by these rules, an application for an order or other relief shall be made by filing a motion for such order or relief with proof of service on all other parties." M.R.A.P. 27(a).

16

¶30.    Because Feng obtained sufficient insurance coverage on the leased property and provided Winters with proof thereof, we affirm the circuit court's ruling that affirmed the county court's grant of summary judgment and award of attorney's fees for Feng.

¶31.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**